### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | |
|---|---|
| **WILSON SCOTT; NOEL SCOTT; WILSON SCOTT**, as father and next friend of his minor son, **JOHN-DAVID SCOTT; WILSON SCOTT**, as father and next friend of his minor son, **WALKER SCOTT**; and **STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY**, <br><br>**Plaintiffs,** <br>v. <br><br>**ABERNATHY MOTORCYCLE SALES, INC.,** <br><br>**Defendant.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **No. 1:18-cv-01077-STA-jay** |

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Abernathy Motorcycle Sales, Inc.'s Motion for Summary Judgment (ECF No. 97) filed on August 12, 2020. Plaintiffs have jointly responded in opposition. For the reasons set forth below, the Motion is **DENIED**.

### BACKGROUND

Plaintiffs Wilson and Noel Scott filed this action for property damage they sustained as a result of allegedly faulty wiring on a Polaris ATV Plaintiffs purchased from Defendant Abernathy Motorcycle Sales, Inc. In their Amended Complaint (ECF No. 60), Plaintiffs alleged that Defendant improperly installed a voltage regulator pursuant to a Polaris recall service. Plaintiffs further alleged that the fault in the voltage regulator wiring caused electrical arcing, which in turn caused the ATV to catch fire. The fire resulted in the destruction of Plaintiffs' home and the loss

of the contents of the home. Defendant denied liability for the wiring and the fire damage to Plaintiffs' property.

Defendant now requests that the Court grant summary judgment with respect to all claims asserted against it. Defendant characterizes Plaintiffs' arguments as resting on a pivotal assumption: that the voltage regulator wire installed by the Defendant was the only wire attached to the energized leg of the starter solenoid. Given Plaintiffs' experts belief that the arcing event indicates that electrical activity above the starter solenoid caused the fire, they used a process of elimination theory to isolate the wire installed by Defendant, the only energized wire in the vicinity, as the only possible source of the fire. Defendant states that this theory is not supported by facts – that there were seven wires attached to the energized leg of the starter solenoid, fatally undermining Plaintiffs' process of elimination theory. Further, Defendant claims that the regulator wire could not possibly have contacted and arced to the portion of the ATV frame in question, because the wire is not long enough.

Plaintiffs have responded in opposition. Plaintiff argues that Defendant's Motion for Summary Judgment is predicated on a mischaracterization of the testimony of Plaintiff's experts.[1] According to Plaintiffs, their experts never denied the existence of other wires attached to the solenoid post and the deposition statements cited by Defendant are taken out of context. Additionally, Plaintiffs argue that their experts' conclusions were informed by an analysis of how the other six wires attached to the starter solenoid. They refute Defendant's claim that the other wires are just as likely as the regulator wire to have caused the fire, arguing that the manner in

---

[1] Defendant has raised an objection in its Reply to the additional opinion testimony submitted by Plaintiffs in their Response. (ECF No. 101.) Defendant has also filed a separate motion to exclude the testimony of Plaintiffs' experts. (ECF No. 103.)

2

which the former wires were connected and configured do not allow for them to be considered potential causes of the fire.

To decide Abernathy Motorcycle's Motion for Summary Judgment, the Court must first consider whether any genuine issue of material fact exists that might preclude judgment as a matter of law. A fact is material if the fact "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite particular parts of the record and show that the evidence fails to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1). Local Rule 56.1(a) requires a party seeking summary judgment to prepare a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute." Local R. 56.1(a). In support of its Motion, Abernathy Motorcycles has filed a statement of undisputed facts, and Plaintiff has responded.

Based on the parties' submissions, the Court finds that the following facts are undisputed for purposes of summary judgment, unless otherwise noted. On May 25, 2016, Plaintiff Wilson Scott purchased s 2016 Polaris RZR XP4 1000 (the ATV) from Abernathy Motorcycle Sales, Inc. (Def.'s Statement of Undisputed Fact ¶ 2.) Prior to the sale, the ATV was subject to a Technical Service Bulletin from the manufacturer, Polaris, that required replacement of the ATV's voltage regulator. (*Id.*) On May 23, 2016, Defendant made the required service adjustment, replacing the existing voltage regulator with a new voltage regulator kit supplied by Polaris. (*Id.*) On April 30,

3

2017, a fire occurred at the home of Plaintiffs Wilson Scott and Noel Scott. (*Id*. at ¶ 1.) Plaintiffs allege that the fire originated with the ATV that was stored in Plaintiffs' garage. (*Id*.) Plaintiffs allege that the fire originated in the engine compartment of the ATV near the starter solenoid. (*Id*. at ¶ 2.) According to Plaintiffs' experts, electrical arcing on the ATV frame above the starter solenoid was the cause of the fire. (*Id*. at ¶ 3.) Plaintiffs allege that Abernathy Motorcycle's improper installation of wiring associated with the new voltage regulator caused the fire. (*Id*.) During Plaintiffs' post-fire investigation, a short section of wire, a component of the voltage regulator installed by Abernathy Motorcycle, was found attached to the energized post of the ATV's starter solenoid. (*Id*.) The positive wire for the voltage regulator was largely destroyed in the fire, leaving only that short section of wire attached to the post. (*Id*. at ¶ 4.) Because of damage from the fire, the pre-fire location of wires associated with the voltage regulator in the ATV could not be ascertained. (*Id*.) The voltage regulator is one of several wires attached to the starter solenoid post. (*Id*. at ¶ 5.) Polaris outlined the proper way to replace the original voltage regulator on the ATV, which is to remove the original regulator and wiring harness and install the new voltage regulator kit. (*Id*. at ¶ 6.) Removing the original voltage regulator requires removing the original wiring harness connections. (*Id*. at ¶ 7.) To install the new voltage regulator, the new regulator kit must be connected to the ATV by attaching the ground wire (brown) to the ground stud located on the ATV frame behind the starter solenoid and attaching the positive wire (gray) to the bottom post of the starter solenoid. (*Id*. at ¶ 8.) Plaintiffs have no evidence to show that any representative of Abernathy Motorcycles altered or modified the location or routing of any other wires attached to the energized leg of the starter solenoid. (*Id*. at ¶ 9.)

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). In reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court does not engage in "jury functions" like "credibility determinations and weighing the evidence." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019) (citing *Anderson*, 477 U.S. at 255). Rather, the question for the Court is whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson*, 477 U.S. at 252. In other words, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law." *Id.* at 251–52. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## **ANALYSIS**

When jurisdiction is founded on diversity of citizenship, the federal court must apply the forum state's substantive law, including the forum state's choice of law rule. *Uhl v. Komatsu Forklift Co.,* 512 F.3d 294, 302 (6th Cir.2008). Tennessee follows the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws to choice-of-law questions. *Hataway v. McKinley,* 830 S.W.2d 53, 59 (Tenn.1992). Under this approach, "the

5

law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." *Id.* at 59.  Here, the injury occurred in Alabama, so the substantive law of Alabama applies to Plaintiffs' claims of negligence, product liability, and wantonness.  Regarding Plaintiffs' claims for breach of warranties, Tennessee law applies. Tennessee follows the rule of *lex loci contractus.*  This rule provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent.  *Ohio Cas. Ins. Co. v. Travelers Indem. Co.,* 493 S.W.2d 465, 467 (Tenn.1973); *Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014).  Therefore, because the contract between the parties was executed in Tennessee, Plaintiffs' claim for breach of implied warranties of merchantability and fitness for a particular purpose are governed by Tennessee law.

### A. Negligence Claim

To prove negligence, a plaintiff must establish: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury. *Farr Metal, Inc. v. Hines*, 738 So.2d 863 (Ala. 1999), citing *Crowne Invs., Inc. v. Bryant*, 638 So.2d 873 (Ala. 1994). "Negligence alone does not afford a cause of action. Liability will be imposed only when negligence is the proximate cause of injury; injury must be a natural and probable consequence of the negligent act or omission which an ordinarily prudent person ought reasonably to foresee would result in injury.  If, between the alleged negligence act or omission and the injury, there occurs an independent, intervening, unforeseeable event, the causal connection between the alleged negligence and the injury is broken." *Vines v. Plantation Motor Lodge,* 336 So.2d 1338, 1339 (Ala.1976) quoting *Mobile City Lines, Inc. v. Proctor,* 272 Ala. 217, 130 So.2d 388 (1961); *Mahone v. Birmingham Electric Co.,* 261 Ala. 132, 73 So.2d 378 (1954)."  "The question

of proximate case is almost always a question of fact to be determined by the jury. The question must go to the jury if reasonable inferences from the evidence support the theory of the complaint. *Marshall County v. Uptain,* 409 So.2d 423, 425 (Ala.1981). Summary judgment is rarely appropriate in a negligence action. *Nunnelee v. City of Decatur,* 643 So.2d 543 (Ala.1993); *see also, Vick v. H.S.I. Management, Inc.,* 507 So.2d 433 (Ala.1987); *Allen v. Mobile Infirmary,* 413 So.2d 1051 (Ala.1982); and *Folmar v. Montgomery Fair Co.,* 293 Ala. 686, 309 So.2d 818 (1975).

Here, it is undisputed between the parties that Defendant had a duty to Plaintiffs and that damage or injury occurred. The conflict therefore rests on whether that duty was breached and whether such a breach was the proximate cause of the injury. Defendant argues that there is no evidence that Abernathy installed the voltage wire in question improperly. Plaintiffs' theory of the case, according to Defendant, relies on a process of elimination theory whereby only the voltage regulator wire installed by Abernathy was attached to the starter solenoid and therefore only that wire was responsible for the arcing event. Accordingly, the existence of multiple wires diminishes the probability that the wire installed by Abernathy caused the arcing event. As Defendant reasons, the existence of two wires on the starter solenoid would reduce the likelihood of Abernathy being responsible for the arcing event to fifty percent; if there were four wires the probability would drop to twenty-five-percent; and, as both parties acknowledge is the case here, with seven wires there would be about a fifteen percent chance that the voltage regulator wire installed by Abernathy was the cause of arcing above the starter solenoid. Therefore, the evidence of Defendant's responsibility for the injury is too uncertain to be submitted to the jury.

Plaintiffs argue that Defendant mischaracterizes their testimony of their experts and distorts Plaintiffs' theory of negligence as resting on the opinion the six other wires attached to the starter

7

solenoid were just as likely to cause the arcing event. However, Plaintiffs claim that their experts were cognizant of the six other wires and discarded them as potential culprits of the fire because they were emphatically not just as likely as the voltage regulator wire, by virtue of positioning and type, to have arced. Even disregarding that clarification, Plaintiffs present additional evidence indicating that the replacement of the voltage regulator wire was improperly done by Abernathy. They cite to the deposition testimony of Abernathy technician Matthew Mount, who testified that the original ground and positive wires were not replaced as required by the manufacturer. Plaintiffs note that Mount contradicted his testimony in a declaration submitted in support of Defendant's Motion, now stating that he changed the positive and ground wire when performing the voltage regulator recall service. In its Reply, Defendant contests that this point is not relevant because the deposition testimony is remote in time and because it does not relate to a material fact – characterizing Plaintiffs' case as being centered on "claims that Abernathy *did* install this wiring harness." However, the point most compellingly relates, not to whether Abernathy did or did not install the wiring harness, but whether they did so properly, which is Plaintiffs' main area of contention. Also in the record is the undisputed fact that Abernathy engaged in a pre-delivery inspection as part of its assembly process, which involved the use of an inspection checklist provided by the manufacturer. The checklist entry for the inspection of wire harness/hose lines was not checked. Plaintiffs make the inference that Abernathy did not conduct an inspection of the wire harness and hose lines in the ATV, possibly missing wire abrasion that may have contributed to a short circuit and fire which also go to the claim of improper installation.

Viewing the evidence in the light most favorable to the Plaintiffs and resolving all reasonable doubts against Defendant, the Court cannot preclude the possibility that a reasonable juror could find by a preponderance of the evidence in favor of the Plaintiffs' negligence claim. Defendant's

arguments, and Plaintiffs', go largely towards the credibility of their respective experts and the weight of the evidence, which are questions best appropriate for the fact finder. Defendant's argument boils down to the position that no reasonable juror could find by a preponderance of the evidence that a fifteen percent chance that the voltage regulator wire arced is sufficient to prove Abernathy's negligence. Putting aside for now Plaintiffs' rebuttal that their experts' testimony has been mischaracterized, fifteen percent is not zero. Defendant does not defeat Plaintiffs' case completely. Further, the so-called "process of elimination" argument does not exist in isolation, as Defendant suggests. Coupled with some of the above disputed facts, a reasonable juror may find in favor of the Plaintiffs by a preponderance of the evidence. Therefore, and in accordance with the preference against resolving negligence claims on summary judgment, the Court concludes that Defendant is not entitled to judgment as a matter of law on Plaintiffs' negligence claim.

Defendant resists this conclusion by arguing that Plaintiffs' entire case is "irredeemably based on the false belief that the regulator wire installed by Abernathy was the only small-gauge wire attached to the solenoid post." (Def. Reply at ¶ 8.) It follows from Defendant's characterizations of Plaintiffs' claims and the opinions of Plaintiffs' experts that, as Defendant argues, the affidavits filed in response to its motion for summary judgment directly contradict previous testimony and create an unfair, and untimely, surprise for Defendant that cannot be cured. Defendant has also filed a Motion to Exclude Declarations of Jeffrey Morrill and Perry Hopkins (ECF No. 103.) further arguing that the additional opinion evidence in Plaintiffs' Response should be suppressed. In their response to the Motion to Exclude, Plaintiffs submit that Defendant's Motion is untimely, because it is, in essence, a "continuation of Defendant's reply brief in support of its motion for summary judgment" and so was due within fourteen days of Plaintiffs' Opposition, filed on

9

September 8, 2020. Defendant's Motion, filed on September 28, 2020, was therefore filed six days late, as per Local Rule 56.1(c). Addressing the substance of Defendant's arguments, Plaintiffs argue that the declarations of Morrill and Hopkins are not new or supplemental expert opinions, rather, they are clarifications of previous testimony and are therefore not subject to exclusion under Rule 37(c)(1). As discussed above, the additional opinion evidence offered by Plaintiffs does not change the outcome at summary judgment. The Court will therefore reserve judgment on this issue. [2]

### B. Alabama Extended Manufacturer's Liability Doctrine Claim

To establish liability under the Alabama Extended Manufacturer's Liability Doctrine Claim (AEMLD), a plaintiff must show

> [1] that an injury was caused by one who sold a product in a defective condition that made the product *unreasonably dangerous* to the ultimate user or consumer; [2] that the seller was engaged in the business of selling such a product; and [3] that the product was expected to, and did, reach the user without substantial change in the condition in which it was sold.

*Bell v. T.R. Miller Mill Co.,* 768 So.2d 953, 957 (Ala.2000) (emphasis added). *See also Grimes v. General Motors Corp.,* 205 F.Supp.2d 1292, 1294 (M.D.Ala.2002); *Hicks v. Commercial Union Ins. Co.,* 652 So.2d 211, 215 (Ala.1994); *Tillman v. R.J. Reynolds Tobacco Co.*, 871 So. 2d 28, 31–32 (Ala. 2003). "In an AEMLD action, 'the plaintiff must affirmatively show that the product was sold with a defect or in a defective condition.' *Jordan v. General Motors Corp.,* 581 So.2d

---

[2] The Court is reserving final determination on the issue of the admissibility of these affidavits for trial. It notes that Defendant's objections to the admissibility of Plaintiffs' supplemental opinion testimony go principally to the weight of the evidence rather than to *Daubert* concerns about reliability or relevance. The pivotal question surrounding the admissibility of the affidavits is whether the opinion testimony is accurately understood as new opinion testimony or whether it is simply a proper elaboration on previous testimony. The Court finds it unnecessary to make that determination at this juncture, particularly without the benefit of additional argument and proffer of testimony from the expert witnesses themselves. Furthermore, Plaintiffs have made a preliminary demonstration that, when read in context, their experts' testimony arguably does not match Defendant's characterization. Defendant has preserved its objection in its Reply – this Court's Local Rules do not require a separate motion for exclusion of testimony.

835, 836–37 (Ala.1991). 'Without evidence to support the conclusion that the product was defective and/or unreasonably dangerous when it left the hands of the seller, the burden is not sustained.' *Jordan,* 581 So.2d at 837. 'Proof of an accident and injury is not in itself sufficient to establish liability under the AEMLD; a defect in the product must be affirmatively shown.' *Townsend v. General Motors Corp.,* 642 So.2d 411, 415 (Ala.1994)." *Garrie v. Summit Treestands, LLC*, 50 So. 3d 458, 464 (Ala. Civ. App. 2010). The question of whether a product is unreasonably dangerous is for the trier of fact to decide. *Koehring Cranes & Excavators, Inc. v. Livingston*, 597 So.2d 1354 (Ala.1992). A summary judgment based upon the danger's being open and obvious would be improper, as such a determination is a factual issue for the jury. *See Bean v. BIC Corp.*, 597 So.2d 1350, 14 A.L.R.5th 984 (Ala.1992).

Here, parties dispute the first prong of the AEMLD, that Abernathy sold a product in a defective condition that made the product unreasonably dangerous to the ultimate user or consumer, Plaintiffs. Defendant also asserts that Plaintiffs' AEMLD claim fails as a matter of law under Ala. Code § 6-5-521(b), governing product liability actions, which provides:

> (b) No product liability action may be asserted or may be provided a claim for relief against any distributor, wholesaler, dealer, retailer, or seller of a product, or against an individual or business entity using a product in the production or delivery of its products or services (collectively referred to as the distributor) unless any of the following apply:
> (1) The distributor is also the manufacturer or assembler of the final product and such act is causally related to the product's defective condition.
> (2) The distributor exercised substantial control over the design, testing, manufacture, packaging, or labeling of the product and such act is causally related to the product's condition.
> (3) The distributor altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought.
> (4) It is the intent of this subsection to protect distributors who are merely conduits of a product. This subsection is not intended to protect distributors from independent acts unrelated to the product design or manufacture, such as independent acts of negligence, wantonness, warranty violations, or fraud.

11

Specifically, Defendant maintains that it is an innocent seller entitled to liability protection under this statute and that none of the above enumerated exceptions apply, because its alteration or modification of the ATV is not causally related to the allegedly defective condition. In support of its argument, Defendant merely cites back to its arguments in Section A of their brief addressing Plaintiffs' negligence claims. The Court notes that § 6-5-521(b)(4) states that the subsection's intent is "to protect distributors who are merely conduits of a product," not "to protect distributors from independent acts unrelated to the product design or manufacture, such as independent acts of negligence, wantonness, warranty violations, or fraud." Therefore, where, as the Court has already found, there are triable issues relating to Abernathy's alleged negligence, and where Defendant acknowledges that it altered or modified the ATV prior to selling it to Plaintiffs [thereby making Abernathy more than a mere conduit of the ATV] and that alteration is the contested causal link of the injury in this case, Plaintiffs' AEMLD claims cannot be defeated on summary judgment.

## C. Wantonness Claim

Under Alabama law, "Wantonness" is statutorily defined as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala.Code 1975, § 6–11–20(b)(3). It is "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Copeland v. Pike Liberal Arts School*, 553 So.2d 100 (1989), quoting *Kilcrease v. Harris*, 288 Ala. 245, 251, 259 So.2d 797, 801 (1972). When a person from his knowledge of existing conditions and circumstances is conscious that his conduct will probably result in injury, yet he acts with reckless indifference or disregard of the natural or probable consequences of his act or failure to act, he would be found liable for wantonness. *See Lee v.*

*Ledsinger,* 577 So.2d 900, 903 (1991), citing *Reed v. Brunson*, 527 So.2d 102, 119–20 (Ala.1988). To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff. *Joseph v. Staggs,* 519 So.2d 952 (Ala.1988). A finding of wanton conduct depends upon circumstances and must be based upon facts beyond mere negligence. *Rommell v. Automobile Racing Club of America, Inc.*, 1992, 964 F.2d 1090. Under Alabama law, simple negligence is the inadvertent omission of duty, and wanton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted. *Scott v. ABF Freight Systems, Inc.*, 306 F.Supp.2d 1169 (M.D.Ala.2004).

In support of its motion, Defendant argues that Plaintiffs' wantonness claim is "strained," stating, "at no point throughout the litigation of this case has there been any testimony, evidence, or even suggestion that any person acting on behalf of Abernathy acted with any intent to cause injury or with any knowledge or disregard for a likelihood of injury." According to Defendant, the only evidence "that Abernathy did anything improper" was the presence of a partial wire and the occurrence of a fire. Defendant's scant argument not only exhibits a misstatement of the elements of wantonness, but of the evidence against it. First, a specific design or intent to injure is not an element of wantonness, so it is unnecessary for Plaintiffs to produce evidence that Abernathy acted with the intent to cause injury. *See Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998). Also, Plaintiffs present evidence beyond the mere presence of a partial wire and occurrence of a fire. In its response, Plaintiffs allege that Abernathy failed to perform wire harness, hoses, and lines inspection as specified on the pre-delivery inspection sheet. They cite to the testimony of P. Curtis Campbell, Abernathy's general manager, who acknowledged that the form box indicating completion of the inspection was not checked. Campbell further testified that failing to inspect wires, hoses, and lines for kinks, pinching, and signs of abrasion could result in missing conditions

13

that could lead to fires. Further, the Abernathy employee who performed the pre-delivery inspection, Victor Tejeda, testified in his deposition that he "probably glanced at" the wires, hoses, and lines, claiming that he did not check the box because to inspect every single wire would be very inefficient, involving taking the entire ATV apart. (ECF No. 102-1 at ¶ 9.) However, Tejeda's testimony suggest that he did not inspect, even the visible wires, beyond, perhaps, a mere glance despite it being on the manufacturer's pre-delivery checklist. Therefore, there is disputable evidence that Abernathy, who had a duty to inspect the wiring, failed to do so despite knowing that significant injury could result from the type of defect or damage that could be identified through a visual inspection. Further, as discussed above, the discrepancy in the deposition testimony of Abernathy technician Mount, goes to the question of whether Abernathy properly installed the wiring harness around the voltage regulator. The fact that Mount amended his deposition testimony indicates a consciousness of his duty to correctly install the voltage regulator wire. Whether his testimony that he did so correctly is credited is a question of credibility which is for a jury to decide. Viewing the evidence in the light most favorable to the Plaintiffs and resolving all reasonable doubts against Abernathy, the Court cannot preclude the possibility that a reasonable juror could find by a preponderance of the evidence that Abernathy engaged in wanton conduct.

### D. Breach of Implied Warranty Claims

In Tennessee, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is ... an implied warranty that the goods shall be fit for such purpose." Tenn. Code Ann. § 47–2–315. To create a warranty of fitness for a particular

purpose under Tennessee law, two elements must exist: (1) the seller must have reason to know the buyer's purpose, and (2) the seller must know the buyer is relying on the seller's skill or judgment to furnish the goods. *Dan Stern Homes,* 2009 WL 1910955, at *3 (citing *Alumax Aluminum Corp., Magnolia Div. v. Armstrong Ceiling Sys., Inc.,* 744 S.W.2d 907, 910 (Tenn.Ct.App.1987)). The pivotal question is "whether the product was fit for the particular purpose for which it was bought." *Allen v. Am. Med. Sys., Inc.,* No. 24, 1989 WL 105626, at *11, 1989 Tenn.App. LEXIS 637, at *29 (Tenn.Ct.App. Sept. 15, 1989). Defendant's argument is solely: "no such proof exists, and no allegation is even made concerning these elements [the elements of warranty of fitness for a particular purpose]. This single-sentence argument is plainly insufficient to carry Defendant's request for summary judgment and is actually disingenuous. There is no evidence suggesting that Plaintiffs used the ATV in question for anything other than its ordinary purpose. It can easily be inferred that Abernathy, as a merchant with respect to goods of this kind, would have had reason to know that Plaintiffs would have wanted the ATV for its usual purpose. Second, extensive deposition testimony from Abernathy's own technicians and experts suggests that Abernathy was more than a mere distributor of the product – they partially assembled the vehicle, serviced it, and inspected the ATV as directed by the manufacturer. Significantly for this case, they performed the voltage regulator recall service. Therefore, Abernathy had reason to know that an ordinary buyer would have to rely on its skill and judgment to furnish the ATV. An ordinary buyer would not have the ability to complete or even inspect the above processes.

In Tennessee, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Tenn. Code Ann. § 47–2–314(1). A "merchant" includes "a person who deals in goods of the kind ... involved in the

15

transaction." *Id.* § 47–2–104(1); *see Gentry v. Hershey Co.,* 687 F.Supp.2d 711, 722 (M.D.Tenn.2010). Goods are only "merchantable" when, among other things, they "are fit for the ordinary purposes for which such goods are used." *Id.* § 47–2–314(2)(c). Establishing that goods are not fit for their ordinary purposes "requires only proof, in a general sense and as understood by a layman, that 'something was wrong' with the product." *Browder v. Pettigrew,* 541 S.W.2d 402, 406 (Tenn.1976) (quoting *Scanlon v. Gen. Motors Corp., Chevrolet Motor Div.,* 65 N.J. 582, 326 A.2d 673, 677 (1974)); *see also Body Invest,* 2007 WL 2198230, at *8; *cf. Patton v. McHone,* 822 S.W.2d 608, 617 (Tenn.Ct.App.1991). Defendant correctly points out that under Tenn. Code Ann. § 47–2–314 "there can be no recovery by the purchaser from the immediate seller unless it has shown that the goods purchased do not measure up to the requirements of the implied warranty at the time the goods passed from the seller to the purchaser." *Hollingsworth v. Queen Carpet, Inc.*, 827 S.W.2d 306, 309 (Tenn. Ct. App. 1991). Defendant then argues that the fact that the ATV was used by Plaintiffs for more than eleven months without incident negates any claim that the ATV "did not measure up to the requirements of the implied warranty at the time the goods passed from the seller to the purchaser." However, while that may be evidence which weakens Plaintiffs' claim that the ATV contained a defect at the time of the sale, it does not eliminate it. Plaintiffs' entire case rests on the argument, related to which there are material facts in dispute, that Abernathy improperly performed the voltage regulator recall service and that the improper installation of the voltage regulator wire started a fire. Whether the improper installation of the voltage regulator could have caused the fire despite eleven intervening months of ordinary use is a material fact in dispute, appropriate for submission to a jury. Defendant's motion for summary judgment as to Plaintiffs' breach of implied warranty claims is therefore denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 97) is **DENIED**. Defendant's Motion to Exclude Declarations of Jeffrey Morrill and Perry Hopkins (ECF No. 103) is **DENIED** without prejudice.

    **IT IS SO ORDERED.**

                                       **s/ S. Thomas Anderson**
                                       S. THOMAS ANDERSON
                                       CHIEF UNITED STATES DISTRICT JUDGE

                                       Date:  March 17, 2021.