## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | | |
|---|---|---|
| **AUTO PROPERTY AND CASUALTY INSURANCE COMPANY**, | ) ) ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 1:18-cv-01077-STA-jay** |
| | ) | |
| **ABERNATHY MOTORCYCLE SALES, INC.,** | ) ) ) | |
| **Defendant.** | ) ) | |

## ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE

Before the Court is Defendant's Motion to Exclude Declarations of Jeffrey Morrill and Perry Hopkins (ECF No. 103), filed on September 28, 2020.  Plaintiff has responded in opposition. (ECF No. 104.)  For the reasons set forth below, the Motion is **DENIED**.

## BACKGROUND

Plaintiffs Wilson and Noel Scott filed this action for property damage they sustained as a result of allegedly faulty wiring on a Polaris ATV Plaintiffs purchased from Defendant Abernathy Motorcycle Sales, Inc.  In their initial Complaint (ECF No. 1), Plaintiffs alleged that Defendant had installed a Bluetooth soundbar accessory on the ATV and improperly wired the soundbar to the ATV's starter solenoid.  Plaintiffs further alleged that the fault in the soundbar wiring caused electrical arcing, which in turn caused the ATV to catch fire.  The fire resulted in the destruction of Plaintiffs' home and the loss of the contents of the home.  Defendant denied liability for the wiring and the fire damage to Plaintiffs' property.  The Court entered a Rule 16(b) scheduling order on August 17, 2018, and the parties proceeded with discovery.

During the course of the initial phase of discovery, the parties disclosed expert opinions regarding the cause of the fire.  Plaintiffs disclosed the opinions of two witnesses, Jeff Morrill (a fire investigator) and Perry Hopkins (an electrical engineer), both of whom opined that the fire resulted from a wire from the soundbar attached to the starter solenoid.  Defendant disclosed the opinions of its own fire investigator, Rick Eley, and electrical engineer, Clifford Capps.  Defendant's opinion witnesses opined that the wiring in question could not have come from the soundbar because the wire did not match the wire used in the manufacture and production of the accessory.  Plaintiffs' electrical expert Perry Hopkins sat for a deposition on March 11, 2019, and admitted that the wire he had identified as the cause of the fire was not from the soundbar.

After Plaintiffs' opinion witnesses conceded that the wire did not match the wiring for the soundbar, Plaintiffs amended their pleadings and sought an extension of the schedule to develop a new theory about the source of the wiring.  According to Plaintiffs' Second Amended Complaint (ECF No. 60)[1], the wiring was associated with a manufacturer's recall to replace the ATV's voltage regulator, a repair performed by Defendant.  Plaintiffs obtained evidence from the manufacturer during this second discovery phase to show that the wiring was from the voltage regulator.[2]

On August 11, 2020, Defendant challenged Plaintiffs' new theory by filing its Motion for Summary Judgement.  (ECF No. 96.)  Plaintiffs submitted their Response (ECF No. 99) and included the declarations at issue here.  Explaining the need for these additional declarations, Plaintiffs stated that they were compelled to address Defendant's Summary Judgement argument

---

[1] Plaintiffs had filed a First Amended Complaint on October 16, 2018, just to correct a date in the pleading.  The amendment did not alter the substance of Plaintiffs' claims about the wiring of the soundbar being the cause of the fire and their property damage.

[2] As part of this second phase of the case, the Court granted Defendant leave to file a third-party complaint against the manufacturer.  Order Granting Mot. for Leave to File Third-Party Compl. (ECF No. 67), July 29, 2019.  Defendant ultimately elected not to amend its pleadings.

with the declarations by Jeffery Morrill and Perry Hopkins, believing that Defendant had based its Motion for Summary Judgment on a "complete misinterpretation" of Morrill's and Hopkins' prior deposition testimony.  Defendant contests this position, indicating that the declarations are not clarifications of previous testimony but instead constitute new, previously undisclosed testimony and are therefore untimely supplementations.

Finally, on February 23, 2022, this Court approved a settlement agreement between Defendant and the Scott Plaintiffs: Wilson Scott, Noel Scott, and their minor children Walker and John-David Scott.  (ECF No. 125.)  Thus, the only Plaintiff left in this action is State Auto Property and Casualty Insurance Co. (State Auto).  Consequently, for the remainder of this Order, any reference to Plaintiff is a reference to State Auto, as the Scott Plaintiffs are no longer participants in this action.

## STANDARD OF REVIEW

Federal Rule of Evidence 702 permits a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" to give opinion testimony if the following conditions are met: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.  Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose the identity of any expert it intends to call at trial pursuant to Federal Rule of Evidence 702 as well as a written report prepared and signed by the opinion witness.  Fed. R. Civ. P. 26(a)(2)(A).  Among other things the witness's report must contain "a complete statement of all opinions the witness will express and

the basis and reasons for them" and "the facts or data considered by the witness in forming" the opinions. Fed. R. Civ. P. 26(a)(2)(B).

Rule 26 also governs the timing and supplementation of expert disclosures. Rule 26(a)(2)(D) requires a party to provide its expert disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Generally speaking, a party must supplement or correct a disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). The duty to supplement applies to expert reports and requires the proponent of the witness's opinions to supplement "information included in the report" and "information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2).

Rule 37(c)(1) provides for sanctions for a party's failure to disclose or supplement an expert opinion. The default position under Rule 37 is that the party cannot use the opinion testimony at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37 permits a district court to consider other sanctions, either in addition to or in lieu of exclusion: ordering a party to pay the reasonable expenses incurred by the other party as a result of the failure to disclose or supplement; instructing the jury on the failure and permit it to draw an appropriate adverse inference; and imposing any other sanction authorized under certain subparagraphs of Rule 37(b). *Id*. The district court ultimately has the discretion about how to sanction a party for the failure to disclose or supplement.

Distinct from "supplementation" is the concept of "clarification," with each concept being governed by different strictures. Clarifications are statements that better illustrate the meaning of previous statements. In contrast to supplementations, clarifications are not new assertions, rather

they allow the reader to better understand previously asserted concepts.  The limitations on clarifying statements are not as severe as the limitations imposed on supplementations. Specifically, the Sixth Circuit has stated that "nothing in Rule 26 . . . precludes an expert from revising or further clarifying opinions, particularly in response to points raised in the presentation of a case." *McHugh v. Olympia Entm't, Inc.*, 37 Fed. Appx. 730, 735 (6th Cir. 2002) (citing *Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 344 (8th Cir. 1979) (noting trial judge has wide discretion to allow expert testimony even though it was revised shortly before trial). Although there are some restrictions, clarifications are regularly permitted as part of the summary judgment stage.  *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, 250 F. Supp. 3d 244, 261 (W.D. Ky. 2017) ("Generally, Rule 26 of the Federal Rules of Civil Procedure does not prohibit an expert from revising and clarifying his opinions, so long as the testimony is not a departure from the "general scheme" of the expert's report.").  Thus, so long as the declaration does not vastly differ from his or her original report, the declaration is deemed a clarification and is not prohibited by Rule 26.  *See id.*

## ANALYSIS

Understanding the distinction between "clarification" and "supplementation" is critical to determining this Motion because the affidavits at issue are subject to exclusion depending on their categorization.  To highlight some crucial facts, the disclosure of Plaintiff's expert information under Rule 26(a)(2) was required by January 24, 2020.  (ECF No. 64.)  Further, the Scheduling Order required supplementation of expert information under Rule 26(e)(2) by March 24, 2020. But the declarations in question were not filed until September 8, 2020.  Given that the deadline for supplementation expired prior to Plaintiff's submission of the additional declarations, the

question here is whether the declarations are untimely supplementations or permissible clarifications of prior testimony.

Addressing the issue directly, Plaintiff argues that "[t]he contents of the declarations serve as a clarification of the relevant deposition testimony and the expert opinions on which they are based." If Plaintiff's characterization of these affidavits is accurate, then Plaintiff is merely submitting statements that better illuminate Plaintiff's original expert disclosures. However, Defendant characterizes the declarations of Jeffrey Morrill and Perry Hopkins as new, previously undisclosed expert opinions within the ambit of Rule 26 and therefore subject to exclusion as untimely under Rule 37(c).

Turning to the specifics, Defendant begins by claiming that the affidavits directly contradict the experts' previous deposition testimony. If this is a correct understanding, then the affidavits are supplemental and are subject to exclusion absent additional justification. *See Aerel, S.R.L. v. PCC Airfoils*, L.L.C., 448 F.3d 899, 908 (6th Cir. 2006) (internal citation omitted). To prove its point, Defendant highlights specific statements indicating that Plaintiff's experts changed their opinions on material matters. In their most recent declarations, Plaintiff's experts state that five particular wires were not independently attached to the starter solenoid post but were crimped together onto a single ring terminal and then attached to the starter solenoid post. In its Motion for Summary Judgement, Defendant asserted that Plaintiff's theory of the case rests on the belief that there was only one small-gauge wire attached to the starter solenoid. Thus, if Plaintiff's experts originally indicated that only one wire was attached to the starter solenoid but now acknowledge that there were multiple wires attached, this shift in perspective would be significant and contrary to the prior deposition testimony of its experts.

Further, according to the affidavits at issue, the bundle of five wires, given their position, could not have reached the area where the arcing occurred, leaving the wire installed by Defendant as the only possible source of the fire.  Thus, the theory offered in Plaintiff's recent affidavits argues that Defendant's installation of the small-gauge voltage regulator wire necessarily caused the fire by nature of its location.  But Defendant claims that the affidavit statements regarding the arcing and crimped-together wires are contradictory.  In their prior deposition, Plaintiff's experts did not take a firm position on whether the crimped-together wires were located where the arcing occurred.  Failing to state an opinion on this matter in the original report and depositions could constitute contradictory statements if the experts later addressed the issue in demonstrative terms. *Reich v. City of Elizabethtown, Kentucky*, 945 F.3d 968, 976 (6th Cir. 2019) (stating that denying knowledge of material facts during a deposition makes later affidavit statements addressing such facts contradictory).

However, in response, Plaintiff provides an explanation that harmonizes the apparent discord.  Specifically, Plaintiff states that Defendant's framing of the experts' statements is incorrect because Defendant offered "oblique hypotheticals" instead of directly relevant questions during the depositions.  In other words, Defendant misinterpreted the experts' deposition opinions by addressing answers prompted by abstract questions.  Thus, the statements made by Plaintiff's experts in their affidavits are not contradictory, as they merely correct Defendant's misinterpretation of the deposition statements.  Plaintiff states that its experts' affidavits continue to assert that the only wire manipulated by Defendant was the source of the fire.

To be more precise, Plaintiff claims that its experts' allegedly inconclusive, contradictory answers were based on a photograph of the starter solenoid in its post-fire state.  Thus, the experts were not viewing an exemplar ATV when giving their deposition responses.  Because they only

viewed the damaged starter solenoid during the deposition, Plaintiff's experts were unable to identify the five-wire bundle that was the target of Defendant's questioning.  Although Defendant showed one of the experts a schematic of the relevant wiring, Plaintiff asserts that this schematic incurred a misleading response from Morrill because the schematic was not an actual portrayal of the "manner and direction in which these were routed and/or positioned before the fire occurred." Thus, Plaintiff states that Defendant's use of a schematic instead of a picture of an exemplar ATV caused a response that would appear to contradict prior testimony.  Importantly, Plaintiff states that "[t]he diagram does not include any indication that these five wires are, in fact, bundled together, and routed away from that portion of the ATV frame where evidence of electrical arcing was found."  Stated succinctly, the diagram misrepresented the actual state of the ATV's wiring. Accordingly, any response offered in reference to the diagram would not accurately portray the experts' opinions on what actually caused the fire.

Finally, during their depositions, Defendant asserts that both experts were shown an additional picture depicting the starter solenoid and attendant wires but still clamed ignorance on how the wires were routed and what they powered.  Defendant states that this claim of ignorance contradicts the experts' later affidavit testimony where the experts gave definitive responses on these issues.  However, Plaintiff contends that the declarations in the affidavits were based on Defendant's Exhibit A—not the photo shown to Plaintiff's experts at the depositions.  Plaintiff states that the two photos were taken at different angles and that the photo shown at the depositions was incomplete.  Consequently, it was reasonable for Plaintiff's experts to be noncommittal in their depositions.  In other words, the experts were not being evasive during the depositions; the photos shown did not supply the context necessary to provide definitive responses.

In essence, Plaintiff asserts that the deposition statements were consistent with their theory of this case, but the interpretation of their testimony was complicated by Defendant's indirect line of questioning and use of photos and a diagram which differed from the evidence that Plaintiff's experts used to form and illustrate their opinions.

Although the disposition of this issue is a close call and is complicated by the technical nature of the evidence in this case, Plaintiff's arguments carry the most weight.  It is most plausible that Defendant misconstrued aspects of Plaintiff's arguments.  Moreover, Plaintiff's contentions regarding the photos and nature of deposition questioning provide the best explanation of the discrepancies presented by Defendant.  Given the strength of Plaintiff's counterarguments here, Defendant has not carried its burden of proof on this issue.  Instead, Plaintiff has shown with sufficient certainty that the affidavits functioned as clarifications of the experts' previous reports and deposition statements.  Notably, this Order does not prevent Defendant from challenging Plaintiff's theories or attempting to demonstrate testimonial inconsistencies at trial.  Although this Order allows the affidavit evidence, it also does not endorse or definitively declare the consistency of the expert statements.  The Court has found Plaintiff's arguments persuasive enough to survive Defendant's Motion.  Ultimately therefore, the affidavits of Jeffrey Morrill and Perry Hopkins are admissible and shall not be excluded.

## **CONCLUSION**

For the reasons stated above, Defendant's Motion to Exclude Declarations of Jeffrey Morrill and Perry Hopkins (ECF No. 103) must be **DENIED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:  February 24, 2022.

9